# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JESSE COLE COCHRAN and
DANIELLE M. COCHRAN,
individually and as next friends and
natural guardians of their son
AUSTIN COCHRAN,

                  **Plaintiffs,**

   **v.**

THE BRINKMANN
CORPORATION,

   **Defendant/Third-Party Plaintiff,**

   **v.**

ROY COCHRAN and RENÁ
COCHRAN,

        **Third-Party Defendants.**

**1:08-cv-1790-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Brinkmann Corporation's

("Defendant") Motion to Strike Plaintiffs' Supplemental Report Pursuant to Rule

26(e)(2) and Exclude the Supplemental Reports and Testimony of Plaintiffs'

Expert Harry Edmondson [154], Defendant's <u>Daubert</u> Motion to Exclude Harry N.

Edmondson [166], Defendant's <u>Daubert</u> Motion to Exclude Dr. Kenneth Laughery

[167], Defendant's Motion to Strike Plaintiffs' Expert Harry Edmondson's August

16, 2009 Affidavit [212], and Defendant's Motion to Strike Plaintiffs' Late Filed Expert Affidavits Submitted by Doyle, Brani, and Laughery, and for Sanctions Pursuant to Rule 37 [213].

## I.  BACKGROUND

### A.  <u>Introduction</u>

On May 16, 2008, Plaintiffs Jesse Cochran and Danielle Cochran, individually and as next friends and natural guardians of their son, Austin Cochran ("Plaintiffs"), brought this products liability action for injuries to their son allegedly caused by a turkey fryer manufactured by Defendant [1].[1]  Plaintiffs allege Defendant is liable for Austin's past and future injuries related to burns he received from hot oil which spilled from the turkey fryer when he fell on the gas line that was attached to the fryer and a propane gas tank.  Plaintiffs claim the turkey fryer was defective and unfit for use, was inherently dangerous, and did not have adequate warnings.  Plaintiffs assert strict liability and negligence claims.[2]

---

[1]  On July 8, 2008, Plaintiffs filed an amended complaint, before the Defendant filed an Answer, pursuant to Fed. R. Civ. P. 15(a)(1)(A) [9].

[2]  Plaintiffs' original complaint also asserted a claim for nuisance.  The nuisance claim was not included in the Amended Complaint and thus is deemed abandoned in this litigation.

## B.    Procedural Background

Discovery in this litigation originally was scheduled to conclude on November 23, 2008.  On October 1, 2008, the parties filed a Joint Motion for Status Conference and to Amend the Scheduling Order, requesting that discovery be extended to January 23, 2009 [22].  On October 14, 2008, the Court granted the request and discovery, including expert discovery, was extended to January 23, 2009 [30].  The Court stated that no further extensions would be allowed.  To insure that discovery would be completed on time and to allow the Court to manage the litigation through the conclusion of discovery, the Court ordered that the parties submit, on or before October 27, 2008, a detailed discovery plan that included the date for designation and counter-designation of experts and service of Rule 26 reports.  On October 27, 2008, the parties filed their detailed discovery plan which set forth the following agreed upon deadlines:

1. The Plaintiffs shall serve expert witness reports no later than December 5, 2008.

2. The Defendant shall depose all of Plaintiffs' experts by December 31, 2008.

3. The Defendant shall serve expert witness reports no later than January 5, 2009.

4. Plaintiffs shall depose all of Defendant's experts by January 23, 2009 [37].

On October 30, 2008, the Court approved the parties' October 27, 2008 discovery plan [40]. Thus, the parties proposed and the Court ordered a specific plan for discovery, including the disclosure of expert opinions and the deposition of experts, all to be completed by the January 23, 2009 discovery deadline that the Court had approved as proposed by the parties. In accordance with the discovery plan, Plaintiffs disclosed their experts and served their expert reports with their experts' opinions by the December 5, 2008 deadline. Two experts were identified and their reports were filed. The experts were Harry N. Edmondson, Plaintiffs' design defect expert, and Kenneth R. Laughery, Plaintiffs' expert on warnings and also on design and design alternatives.

On December 23, 2008, the parties filed a Joint Report on Discovery, updating the Court on the status of discovery [83]. Despite the Court's admonition that discovery would not be extended beyond January 23, 2009, on January 9, 2009, the parties filed a Joint Motion to Amend the Discovery Schedule, which requested more time for the depositions of specific fact witnesses and experts [95]. The Court reluctantly agreed to an extension and, on January 20, 2009, the Court entered an order allowing the parties to depose fact witnesses by February 17, 2009 and life care plan experts by January 30, 2009 [101]. The parties did not request additional time to identify further experts or to allow reports to be amended or

experts to offer opinions that were in addition to or different from those contained in the expert reports which the parties had filed and served on December 5, 2008 and January 5, 2009.

On April 9, 2009, the Court held a hearing to address pending discovery motions. After ruling on the parties' discovery disputes, the Court again, and reluctantly, extended the discovery deadline to May 29, 2009 [135]. This extension also did not include an extension of the time to amend or add to expert opinions, and neither party mentioned that changes to expert opinions were anticipated or required.

### C.    Background Regarding Plaintiffs' Expert Harry N. Edmondson

Plaintiffs' expert, Harry N. Edmondson, testified during his deposition that he was retained by Plaintiffs in January 2008, and likely started working on his expert report on August 28, 2009, four months before his report was due. Def.'s Motion to Strike Pls' Supplemental Report, Ex. A at 13, 53-5. On December 5, 2008 – the deadline for Plaintiffs' disclosure of expert witnesses – Plaintiffs disclosed Edmondson as an expert and produced his expert report, which he completed on December 4, 2008, the day before it was due. See id. at Exs. B, C. Edmondson's report contained two opinions regarding the design and engineering of Defendant's turkey fryer: (1) "[t]he [fryer's] resistance to being tipped over is

inadequate," and (2) "[t]he height of the gas connection to the burner on the stand contributed to the instability of the fryer in this case." Id. at Ex. C.

On December 15, 2008, Defendant noticed Edmondson's deposition. Id. at Ex. D. On December 19, 2008, Edmondson was deposed. During the deposition, Defendant learned that, on December 17, 2008, Edmondson had, for the first time, conducted physical testing of the turkey fryer at issue in this case and on which he had offered the two opinions in his December 4, 2008 report. This testing was not included in his December 4, 2008 expert report (because it had not been done) nor was there any indication in the report that he intended to conduct any testing. Plaintiffs contend that, on December 18, 2008, the day before Edmondson's deposition, they emailed a Second Supplemental Response to Defendant's First Interrogatories, which included notice of the testing that had been conducted the day before. Id. at Ex. A, 23-8; see also id. at Ex. E. They did not, however, make any other effort before the deposition to advise counsel for the Defendant that this eleventh hour, post-expert report testing had been conducted. The attorney who deposed Edmondson was not aware of this testing until the deposition. Id. at 5.[3] During the deposition, Plaintiffs also produced a video and photographs of

---

[3] The Supplemental Response to Defendant's First Interrogatories was not emailed to him. Def.'s Motion to Strike Pls' Supplemental Report, 5.

Edmondson's December 17, 2008 testing, id. at Ex. A, 178-79, which had not been produced to Defendant at any point before the deposition.

On January 29, 2009, Edmondson conducted still further testing on the fryer at issue, apparently to respond to issues regarding his expert opinions that were disclosed at his deposition. On February 5, 2009, Plaintiffs sent Defendant videos and photographs of the January 29, 2009 testing, and offered to make Edmondson available to be further deposed. This offer was made even though Plaintiffs had proposed, agreed to, and the Court had ordered a specific date for the filing of expert reports and that discovery of Plaintiffs' experts would be completed by December 31, 2008.

On May 14, 2009, Plaintiffs filed their Supplemental Report Pursuant to 26(e)(2), which indicated that Edmondson was expected to testify regarding his December 17, 2008 and January 29, 2009 testing and listed a number of exhibits related to this testing. The report specifically stated that Edmondson now would testify that his testing confirmed Defendant's fryer did not meet the stability standard of the American National Standards Institute ("ANSI") and that reasonable alternative designs would have prevented the injuries suffered by Austin Cochran. Id. at Ex. F. This amended report, with Edmondson's new and different opinions based on his post-December 5, 2008 testing, was filed over five

months after Plaintiffs' expert reports were ordered to be filed. On May 27, 2009, Plaintiffs served a revised expert report of Edmondson, which included his new opinion that Defendant's fryer did not meet the minimum stability standard of ANSI. Id. at Ex. G.

On July 1, 2009, Defendant filed its Motion to Strike Plaintiffs' Supplemental Report Pursuant to Rule 26(e)(2) and Exclude the Supplemental Reports and Testimony of Plaintiffs' Expert Harry Edmondson [154]. On August 10, 2009, Plaintiffs filed their Response [187], and, on August 24, 2009, Defendant filed its Reply [208].

On July 1, 2009, Defendant also filed its Daubert Motion to Exclude Expert Witness Harry Edmondson [166]. On August 17, 2009, Plaintiffs filed their Response to Defendant's Daubert Motion [195], and, on August 31, 2009, Defendant filed its Reply [211].

On August 31, 2009, Defendant filed its Motion to Strike Plaintiffs' Expert Harry Edmondson's August 16, 2009 Affidavit [212] and its Motion to Strike Plaintiffs' Late Filed Expert Affidavits Submitted by Doyle, Brani, and Laughery, and for Sanctions Pursuant to Rule 37 [213]. On September 15, 2009, Plaintiffs filed their Responses to the Motions to Strike [215, 216], and, on September 29, 2009, Defendant filed its Replies [217, 218].

### D. Background Regarding Plaintiffs' Expert Kenneth R. Laughery

In accordance with the Court's December 5, 2008 deadline for expert witness and expert report disclosure, Plaintiffs disclosed Kenneth R. Laughery, Ph.D. as an expert witness and produced his expert report. In his report, Laughery, a human factors witness, opined that:

1. Defendant's turkey fryer design was flawed and alternative designs were available. Design factors such as four legs, a wider base, and a lower center of gravity would have resulted in a more stable and safer product.

2. Defendant's turkey fryer had a "tipover hazard," which was due to its number of legs, the width of its base, the height of its center of gravity, and the magnitude and direction of forces required to cause the fryer to tip over. This hazard was not open and obvious and therefore an adequate warning system was imperative.

3. The warning system associated with Defendant's turkey fryer was not adequate with regard to the "tipover hazard." Specifically, Defendant's failure to include warnings on the turkey fryer, and to only provide warnings in the owner's manual, was inadequate.

Def.'s Brief in Support of Motion to Exclude Laughery, Ex. A.

On July 1, 2009, Defendant filed its <u>Daubert</u> Motion to Exclude Expert Witness Kenneth Laughery, Ph.D. [167]. On August 17, 2009, Plaintiffs filed their Response to Defendant's <u>Daubert</u> Motion [194], and, on August 31, 2009, Defendant filed its Reply [210].[4]

---

[4] As discussed above, Defendant also filed a Motion to Strike an affidavit of Laughery submitted in support of his expert witness testimony [213].

## II. DISCUSSION

### A. Defendant's Motion to Strike Plaintiffs' Supplemental Report Pursuant to Rule 26(e)(2) and Exclude the Supplemental Reports and Testimony of Plaintiffs' Expert Harry Edmondson

Defendant seeks to strike Plaintiffs' Supplemental Report Pursuant to Rule 26(e)(2) as to Harry Edmondson and exclude any other report, exhibit, or testimony that relates to testing or opinions formed after the December 5, 2008 deadline for expert witness and expert report disclosure. Defendant claims that, pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, any addition to Edmondson's expert report following December 5, 2008 is untimely. Plaintiffs argue that they were required to disclose Edmondson's testing and opinions as a "supplemental" disclosure under Rule 26(e) of the Federal Rules of Civil Procedure. They further contend that even if the Court does not deem the disclosure "supplemental," a motion to strike is too harsh a remedy.

#### 1. The Requirements of Rule 26

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the disclosure of expert witnesses. It requires that a report, signed by the expert witness, must accompany the disclosure of each expert witness. This report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in

forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B).  A party must make these disclosures at the time and in the sequence that the court orders.  <u>Id.</u> at (a)(2)(C).  A party also must supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect."  <u>Id.</u> at (e)(1).

Moreover, Rule 37(c)(1) of the Federal Rules of Civil Procedure states that when a "party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."  <u>Mitchell v. Ford Motor Co.</u>, 318 Fed. Appx. 821, 825 (11th Cir. 2009) (quoting <u>Leathers v. Pfizer, Inc.</u>, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

## 2.    Analysis

Defendant claims Plaintiffs' disclosures of Edmondson's December 17, 2008 and January 29, 2009 testing and the opinions formed from such testing are untimely under Rule 26(a) because they occurred after the Court's December 5, 2008 deadline.  Defendant asserts that it has been harmed by its inability to pursue discovery of these untimely disclosures.  The Court agrees.

Plaintiffs appear to claim that by Edmondson conducting additional testing and having been deposed and discovered shortcomings in the opinions he offered (which led him to conduct even more testing), Plaintiffs "learn[ed] that in some material respect [Plaintiffs' expert report] [was] incomplete or inaccurate," entitling Plaintiffs to "supplement" Edmondson's report under Rule 26(e).  This is a tortured and self-serving interpretation of what the Rule allows in an attempt to justify Plaintiffs' strategy to introduce opinions and evidence foreclosed by the orders of this Court.  The purpose of expert reports and a deadline for serving them is to put an opposing party on notice of what it must contend with at trial. Plaintiffs' strategy of ongoing testing and report amendment defeats the purpose of the report requirement and the order of this Court, which was to end discovery and fix for the parties the evidence and opinions with which they would have to contend at trial so a trial could be fairly and efficiently conducted.  That effort

would be hopelessly and unfairly frustrated if the Court allowed Plaintiffs' tactic in this case.  Rule 26(e) requires a party to supplement a report it finds was "incomplete or inaccurate."  Fed. R. Civ. P. 26(e)(1)(A).  It is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy.

The principles of fairness and litigation efficiency are embedded in the Court's Local Rule 26.2C.  It provides:

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.
>
> Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

L.R. 26.2C.

Here, at the request of the parties and to insure litigation fairness, the Court allowed experts to be identified and reports to be produced at the end of discovery and then allowed experts to be deposed so all expert discovery would be completed by January 23, 2009.  Plaintiffs ignored the requirement imposed by the Court and now seek to manipulate themselves out of their discovery obligations.  As the

Court's Local Rule provides, failure to comply with the requirements of expert discovery, including as modified here at the parties' request, will result in the exclusion of expert opinions not offered in accordance with Local Rule 26.2C and, in this case, the orders of this Court.

The following facts are undisputed:  Plaintiffs submitted Edmondson's expert report on December 5, 2008, the deadline ordered by the Court.  The report contained only two opinions: (1) the fryer's resistance to being tipped over is inadequate, and (2) the height of the gas connection to the burner contributed to the instability of the fryer.  Edmondson, however, elected to conduct post-report testing on December 17, 2008, only two days before he was to be deposed and despite the fact that he had been retained four months before the report was due.  This post-report testing led to new opinions – that Defendant's fryer did not meet the minimum stability standard of ANSI and reasonable alternative designs would have prevented Austin Cochran's injuries.  Defendant's counsel attempted to question Edmondson regarding this last-minute testing and the new opinions he offered, but under the circumstances the Court agrees Defendant's counsel did not have time to prepare questions regarding the testing or to review the video and

photographs of the testing, which were not produced until the day of the deposition.[5]

It is further undisputed that, on January 29, 2009, one month after Defendant's deadline to depose Plaintiffs' experts, Edmondson conducted still more testing. On February 5, 2009, Plaintiffs sent Defendant more videos and photographs of the testing. Yet, it was not until May 14, 2009 that Plaintiffs filed a supplemental report and May 27, 2009 that they served a revised expert report, officially informing Defendant of Edmondson's testing and his new opinions regarding the fryer's failure to meet the ANSI standard for stability and the existence of reasonable alternative designs.

Rule 26(a) is clear that an expert's report must contain "a <u>complete</u> statement of <u>all</u> opinions the witness will express," "the data or other information considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Plaintiffs undeniably failed to comply with these requirements by adding opinions and exhibits, based on new testing unforecasted to Defendant and which was undertaken weeks and months after the December 5, 2008 deadline for

---

[5] That Plaintiffs did not extend even the courtesy of a call to tell Defendant of this late testing and that Edmondson was offering new and different opinions at his deposition is very difficult to understand and is not conduct a court expects of counsel in litigation in any court.

Edmondson's expert report.  Plaintiffs claim that they were required to make these additional disclosures as "supplemental" disclosures under Rule 26(e), which provides that if a party learns that its disclosure is "incomplete or incorrect," it must supplement or correct it "in a timely manner."  Id. at (e)(1).  Plaintiffs' twisted attempt to use Rule 26(e) to justify their untimely disclosures is unprecedented, and unfair.

Although Edmondson was retained months in advance of the expert report deadline, Edmondson failed to conduct the testing upon which to formulate his expert report.  Rule 26 does not permit a party to circumvent the deadlines imposed by the Court.  See Reid v. Lockheed Martin Aero. Co., 205 F.R.D. 655, 662 (N.D. Ga. 2001) ("Rule 26 does not . . . bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline . . . .  Rule 26 imposes a duty on Plaintiffs; it grants them no right to produce information in a belated fashion.") (emphasis in original).[6]  The Court finds that Plaintiffs' failure to conduct the testing and to offer the opinions based on the testing before the deadline for expert reports was not substantially justified nor were the late testing

_____

[6] Plaintiffs attempt to justify their belated disclosure by claiming that the new opinions and testing were disclosed to Defendant before Edmondson's deposition, and were addressed in Edmondson's deposition.  It is disingenuous to claim that disclosure of an expert's additional opinions and testing the day before a deposition is anything other than an attempt to disadvantage the opposing party.

and disclosures harmless.[7]  See Fed. R. Civ. P. 37(c)(1).  The Court concludes that

Edmondson's December 17, 2008 testing, his testimony regarding that testing, his

January 29, 2009 testing, his May 14, 2009 supplemental report, and his May 27,

2009 revised expert report must be excluded.  Plaintiffs are limited to the opinions

and bases for the opinions stated in Edmondson's December 4, 2008 expert report.

## B.  Defendant's Daubert Motions to Exclude Harry Edmondson and Kenneth Laughery

Defendant seeks to exclude Edmondson as an expert witness, claiming that

the opinions in his December 4, 2008 expert report are not reliable.  Defendant

specifically claims that Edmondson's opinions that (1) the turkey fryer has

inadequate resistance to being "tipped over," and (2) the height of the gas

connection to the burner renders the turkey fryer unstable fail to meet the criteria

under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

Defendant also seeks to exclude the testimony of Plaintiffs' other expert

witness, Laughery, on the grounds that (1) he is not qualified to render expert

---

[7] The Court observes that all of the post-expert report testing and analysis performed by Edmondson is the kind of work a competent and thoughtful expert would have undertaken before offering an opinion in the first instance.  It appears to the Court that Edmondson's and Plaintiffs' strategy was to see where Defendant intended to attack Edmondson's opinions and then conduct additional testing and offer additional opinions to respond to the criticisms of his work.  That is to say, there is not justification in the Court's mind for the post-expert report work that was performed and the offering of new opinions by Edmondson.

opinions on the turkey fryer's design and (2) his opinions regarding the turkey fryer's "tipover hazard" and inadequate warnings are not reliable under Daubert.

### 1.    The Standard on Expert Testimony

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To exercise properly its role as a gatekeeper to the admission of scientific testimony, the Court must consider whether (i) the expert is qualified to testify regarding the matters he intends to address, (ii) the expert's methodology is sufficiently reliable under Daubert, and (iii) the expert's testimony assists the trier of fact to understand the evidence or to determine a fact in issue.  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41 (11th Cir. 2003).

Daubert sets forth a non-exclusive checklist for use in evaluating the reliability of scientific expert testimony.  The factors include: (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead

simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. Daubert, 509 U.S. at 593-94. The Court is not required to consider each of these factors, "and a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech. DC-8, Inc., 326 F.3d at 1341.

The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting Kumho, 526 U.S. at 152). While an engineer "may not necessarily be required to fulfill the demands of a rigid professional protocol in every case, it is well known that engineers routinely

rely upon established principles of physics, material sciences, and industrial design and often utilize technologically sophisticated and carefully calibrated testing methods and devices when arriving at their conclusions.  As such, the accepted methodology, characterizing the practice of an expert in the field of engineering, simply does not involve guesswork or even conjecture; rather, accepted methodology more often involves some inquiry into industry standards, practices, or publications and results in conclusions based upon concrete data, testing, measurements, or calculations."  McGee v. Evenflo Co., 2003 U.S. Dist. LEXIS 25039, at *13 (M.D. Ga. Dec. 11, 2003) (internal citations and quotations omitted).

In applying the Daubert criteria and others that may be relevant, the Court must determine if the expert unjustifiably extrapolated from an accepted premise to an unfounded decision.  General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  That is, there must not be too "great an analytical gap between the data and the opinion proffered."  Id.  The Court must be assured the expert is using the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho, 526 U.S. at 152.  "[N]ot only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules."  Heller v. Shaw Indus.,

Inc., 167 F.3d 146, 155 (3d Cir. 1999). The focus must be on the principles and methodology and not the conclusions reached. Daubert, 509 U.S. at 595.

### 2. Analysis – Edmondson's Opinions

#### a. Edmondson's Opinion that the Turkey Fryer Has Inadequate Resistance to Being "Tipped Over"

Edmondson's first opinion is that "[t]he [turkey fryer's] resistance to being tipped over is inadequate." Def.'s Brief in Support of Motion to Exclude Edmondson, Ex. B. Edmondson measured the "moment arm for tipping over" as 4.77 inches to 5.77 inches, which he deemed to be too unstable. Defendant contends that both Edmondson's data and his resulting opinion fail to meet the Daubert criteria for reliability. The Court agrees.

Edmondson states that his opinion regarding the turkey fryer's stability is based on his analysis of its design. His testimony discloses that he did not have the information an expert requires to calculate the fryer's resistance to tipping over. Edmondson testified that he did not use precise values, but elected instead to estimate the turkey fryer pot's volume and diameter. Deposition of Harry Edmondson ("Edmondson Dep."), 122, 123. Volume and diameter values are necessary to determine the center of gravity of the fryer, which affects the stability of the fryer. Edmondson also admitted that he did not know Austin Cochran's height, weight, or the distance from the top of the picnic table to the hose onto

which Austin jumped, which caused the pot to tip over.  <u>Id.</u> at 79, 118-19, 132-33.

Without these values, he could not have calculated the force which caused the fryer

to tip over.  Edmondson's opinion is not based on "concrete data, testing, [or]

measurements" and his methodology "involve[s] guesswork" and "conjecture,"

and therefore they are not reliable.  <u>See</u> <u>McGee</u>, 2003 U.S. Dist. LEXIS 25039, at

*13.

Edmondson also cannot provide any objective basis for his opinion

regarding the fryer's stability.  Edmondson measured the "moment arm" of the

fryer and opined that the stability of the fryer was inadequate – he offered no

further support for this view.  Edmondson did not cite to an industry standard that

would support his opinion that the moment arm was inadequate.  <u>See</u> Edmondson

Dep., 148.  He did not conduct any physical testing of the fryer's resistance to

tipping over or other fryer models' resistance to tipping over.  <u>Id.</u> at 148, 103.[8]

Edmondson employs nothing more than "a subjective, conclusory approach that

cannot reasonably be assessed for reliability."  <u>See</u> Fed. R. Evid. 702, advisory

committee's note (discussing 2000 amendments to the rule and requirements of

<u>Daubert</u>).

---

[8] For the reasons discussed above, the Court does not consider Edmondson's
untimely testing on December 17, 2008 and January 29, 2009.

Even if Edmondson could offer support for his opinion that the fryer's resistance to tipping over was inadequate, he conceded that he did not have the information necessary to determine that, under the circumstances in this case, the fryer would not have tipped over even if, in his opinion, the fryer had been sufficiently stable:

> Q: Um, you have a kid jumping off a bench. And you don't know what the vector is going to be. How do you come up with those numbers and say to yourself, with reasonable degree of engineering certainty or probability, that it wouldn't have tipped anyway?
>
> A: Until we know what force he hit with, it would be hard to say that it wouldn't have tipped.
>
> Q: And that's my point.
>
> A: Yeah.

Edmondson Dep., 118-19. Edmondson essentially concedes that at some point, any fryer, no matter how stable, will tip over if the force is great enough. Because he did not consider, in this case, the force with which the fryer was tipped over in his analysis, Edmondson's opinion that the fryer was not sufficiently stable does not assist the jury in its defective design inquiry. In fact, even if he did know the force – which he did not – his testimony was that a different design might not have prevented the tipping caused by Austin Cochran falling on the gas hose.

b. <u>Edmondson's Opinion Regarding the Fryer's Instability Due to the Height of the Gas Connection</u>

Edmondson's second opinion is that "[t]he height of the gas connection to the burner on this stand contributed to the instability in this case."  Def.'s Brief in Support of Motion to Exclude Edmondson, Ex. B.  Edmondson does not provide an opinion, let alone an industry benchmark, of what constitutes a safe height for the gas connection.  He simply states that "[i]f the height of the gas connection had been close enough to the ground so that the bending of the mount for the burner would have let the hose connection touch the ground, this accident would have been prevented."  <u>Id.</u>  Edmondson did not conduct any physical testing to confirm his conclusory statement that this accident could have been avoided.  Without any specific facts, standards, or methods, it is impossible objectively to test Edmondson's opinion for reliability.

Edmondson's opinions regarding the fryer's resistance to being tipped over and the height of the gas connection fall far short of the standard required for expert witnesses.  While Edmondson could have obtained precise calculations and results if he had conducted testing with accurate values and methods and then written his report based on the testing, he did not do so.  This opinion is not competent under <u>Daubert</u>, does not qualify as sufficiently reliable to be admissible, and otherwise would not be helpful to a jury.  It is required to be excluded.

### 3. Analysis – Laughery's Opinions

#### a. Laughery's Opinion that Defendant's Turkey Fryer Design Was Flawed and Alternative Designs Were Available

Laughery's first opinion is that Defendant's turkey fryer design was flawed and alternative designs were available. He further opines that design factors such as four legs, a wider base, and a lower center of gravity would have resulted in a more stable and safer product. Defendant claims that Laughery is not qualified to testify regarding the turkey fryer's design or design alternatives. The Court agrees.

In his deposition testimony, Laughery admits that he is not qualified to testify as an expert witness regarding the turkey fryer's design or design alternatives. Laughery testified that he does not have any engineering design experience:

Q:   I want to make sure, did you ever have any design experience?

A:   Only design of warnings, not hardware, if I interpret your question that way.

Q:   Correct.

A:   I consider that part of design but I wouldn't be the guy to do the engineering design or the architectural design.

Deposition of Kenneth Laughery ("Laughery Dep."), 19.  When questioned about factors critical to the turkey fryer's design, Laughery admitted that such inquiries are not within his field of expertise:

> Q:   Is it within your field of expertise to offer an opinion regarding the center of gravity of the turkey fryer?
>
> A:   No.
>
> Q:   Is it within your field of expertise to offer an opinion as to whether it was too narrow?
>
> A:   No.
>
> Q:   Is it within your field of expertise to offer an opinion as to whether it's unreasonably and defectively prone to tipping over and spilling heated oil?
>
> A:   No.

Id. at 43.

Laughery also testified that he is not an expert "with an ability to testify with respect to alternative engineering designs."  Id. at 20.  He admitted that he was not offering an expert opinion regarding alternative design factors that would have affected the stability of the turkey fryer:

> Q:   It says the design alternatives were readily available.  Four legs, a wider base, a lower center of gravity were design factors that if implemented would have resulted in a more stable and safer product.  Again that's not within your field of expertise to offer an expert opinion regarding the stability of the product, is it?

A: It's true I don't offer that as an expert opinion but that's – I've got enough engineer in me to know that it's true. So I guess it's an assumption in that sense.

Q: But you can't go into a court of law in front of this jury or any jury and say I can offer that as an expert opinion; is that fair?

Mr. Bell: Object.

A: Yes, that's fair. What I would say is I'm assuming that if you put four legs on instead of three, it's more stable. If you put a wider base and a lower center of gravity, it's more stable, and that those are design characteristics that we're not pushing – I'm not trying to say this to be cute. But we are not pushing back the forefront of technology in the late 1990's. I mean, Isaac Newton knew that stuff, I'm sure.

Id. at 62-3.

Plaintiffs do not attempt to defend Laughery's qualifications to offer expert opinions regarding the turkey fryer's design and design alternatives. They instead point to issues irrelevant to Laughery's qualifications, such as the design of other turkey fryers, and the testimonies of Defendant's 30(b)(6) designee and Vice President of Marketing (both of whom are not experts). See Pls' Brief in Opposition to Def.'s Motion to Exclude, 3-8. Laughery's testimony speaks for itself – he is not qualified to render an expert opinion regarding Defendant's turkey fryer design or design alternatives. What he offers on the turkey fryer's design would not be helpful to a jury and it is not helpful to the Court. That Plaintiffs

persist in advocating this clearly incompetent expert testimony evidences further Plaintiffs' evidentiary overreaching in this litigation.

> b. Laughery's Opinion that Defendant's Turkey Fryer Had a "Tipover Hazard"

Laughery's second opinion is that Defendant's turkey fryer had a "tipover hazard," which was due to its number of legs, the width of its base, the height of its center of gravity, and the magnitude and direction of forces required to cause the fryer to tip over. He further asserts that this hazard was not open and obvious and therefore an adequate warning system was imperative. Defendant argues that Laughery's opinion regarding the turkey fryer's "tipover hazard" is not reliable under the Daubert criteria. The Court agrees.

The Court first notes, as discussed above, Laughery is not qualified to testify regarding the turkey fryer's design. To the extent Laughery's opinion that the turkey fryer had a "tipover hazard" depends on his assessment of the fryer's design, it is excluded. The Court also finds that Laughery's opinion is not reliable. In fact, Laughery admits that his opinion regarding the "tipover hazard" is merely an "assumption":

> Q:     I'm saying part of this event in 2007, show me some literature in your file that you've looked at that indicated that this Brinkmann product posed a tipping hazard.

A:    That's an assumption on my part. I'm not sure how to answer your question other than some people in the industry felt it was necessary to form a committee to have a meeting to review the safety issues associated with this and I'm assuming that was among them.

Laughery Dep., 93.

Again, Plaintiffs do not address Laughery's testimony, but instead assert that it is "undisputed" that Defendant's turkey fryer had "a recognized tipover hazard" because the owner's manual warned that tripping over the fryer's hose could cause it to turn over. Pls' Brief in Opposition to Def.'s Motion to Exclude, 2-3. Laughery's opinion does not contain any reference to tripping over the turkey fryer's hose and it is unclear whether Laughery found it relevant enough even to consider it in the various structural design opinions he reached. Regardless, what is contained in the owner's manual warnings is irrelevant to whether Laughery's methodology is reliable under <u>Daubert</u>. Laughery's admission that his opinion regarding the "tipover hazard" of the turkey fryer is an "assumption" essentially is an admission that the opinion cannot meet the <u>Daubert</u> reliability criteria. Laughery does not assert any technique or theory that he employed in reaching this opinion that supports, even superficially, the reliability of the opinion he has offered.

<u>Laughery's Opinion that the Warning System Associated with Defendant's Turkey Fryer Was Not Adequate</u>

Laughery's final opinion is that the turkey fryer had an inadequate warning system with regard to the "tipover hazard."  Laughery specifically opines that Defendant's failure to include warnings on the turkey fryer, and to only provide warnings in the owner's manual, was inadequate.  Defendant claims that Laughery's opinion is not reliable.  The Court disagrees.

Defendant bases its argument almost exclusively on the fact that Laughery did not specifically reference warnings standards from ANSI in his opinion.  <u>See</u> Def.'s Brief in Support of Motion to Exclude Laughery, 14-6.  In Laughery's deposition, however, he explains that his opinion that "it is imperative that an adequate on-product warning be placed on the fryer" is based on ANSI's warning standard, specifically ANSI Z35.  Laughery Dep., 105-06; <u>see also</u> <u>id.</u> at 102-03.  Laughery established that he is well-acquainted with the ANSI warning standard and its various versions over the past ten years, having served as an alternate on ANSI's warning standard committee.  <u>Id.</u> at 57-60.  Laughery's opinion can be challenged objectively and is not simply a subjective, conclusory approach as Defendant contends.

Defendant also claims that Laughery "never produced literature substantiating his opinion the warning systems were inadequate."  Def.'s Brief in

Support of Motion to Exclude Laughery, 15. In his expert report, Laughery cites to five peer-reviewed publications that he authored or edited which are relevant to his testimony in this case:

- <u>Warnings and Risk Communication</u> (Wogalter, M.S., DeJoy, D.M., & Laughery, K.R. eds., Taylor & Francis, 1999).

- Wogalter, M.S. & Laughery, K.R, <u>Warnings and Hazard Communications</u>, <u>in</u> <u>Handbook of Human Factors and Ergonomics</u> (Gavriel Salvendy ed., Wiley, 2006).

- Laughery, K.R, <u>Safety Communications: Warnings</u>, <u>in</u> <u>Applied Ergonomics</u>, 37 (2006).

- Laughery, K.R. & Paige Smith, D., <u>Explicit Information in Warnings</u>, <u>in</u> <u>Handbook of Warnings</u> (M.S. Wogalter ed., Erlbaum, 2006).

- Laughery, K.R. & Wogalter, M.S., <u>Designing Effective Warnings</u>, <u>in</u> <u>Reviews of Human Factors and Ergonomics</u> (Robert C. Williges ed., Human Factors & Ergonomics Society, 2006).

Based on this representative list of his work, Laughery's methodology regarding warning systems has been subject to peer review and publication.

The Court finds that, based on his expert report and testimony, Laughery's opinion regarding the inadequacy of the turkey fryer's warning system meets, albeit barely, the reliability criteria of an expert witness.

## C.  Defendant's Motions to Strike Affidavits

Defendant has filed its Motion to Strike Harry Edmondson's Affidavit and its Motion to Strike the Affidavits of Kenneth Laughery, David Brani, and Michael Doyle.  Plaintiffs submitted the affidavits in support of their Responses to Defendant's <u>Daubert</u> Motions to Exclude Edmondson and Laughery [194, 195], and their Response to Defendant's Motion for Summary Judgment [199-202] in which Plaintiffs sought to rely on the opinions of Edmondson and Laughery to avoid summary judgment.[9]  The affidavits seek to address the grounds on which Defendant's motions to disqualify Plaintiffs' expert witnesses, Edmondson and Laughery, are based.

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  "It is improper to strike an affidavit attached to a motion for summary judgment.  The proper method to challenge such an affidavit is to challenge the admissibility of evidence contained in the affidavit."  <u>Lentz v. Hospitality Staffing Solutions, LLC</u>, No. 1:06-cv-1893, 2008 U.S. Dist. LEXIS

---

[9] The affidavits of Edmondson, Laughery, Brani, and Doyle essentially were submitted to bolster Plaintiffs' arguments that Edmondson's and Laughery's expert opinions are admissible in this case.

6291, at *30-1 (N.D. Ga. Jan. 28, 2008) (citing <u>Jordan v. Cobb Cty., Ga.</u>, 227 F.

Supp. 2d 1322, 1346-47 (N.D. Ga. 2001)); <u>Morgan v. Sears, Roebuck & Co.</u>, 700

F. Supp. 1574, 1576 (N.D. Ga. 1988).  While the motions technically are improper,

the Court opts to consider the motions as Defendant's objections to the

admissibility of evidence contained in the affidavits.

In responding to Defendant's Motion to Exclude Edmondson's testimony,

Plaintiffs rely on affidavits attached to their Response, which purportedly support

Edmondson's methodology.  Plaintiffs submitted an affidavit from Edmondson in

which he attempts to further explain his testing and opinions.  Defendant contends

that some paragraphs of Edmondson's affidavit are inadmissible because they are

subject to Defendant's Motion to Strike Plaintiffs' Supplemental Report and others

are inadmissible under Federal Rules of Evidence 402, 403, 702, 703, and 705.

Consistent with the Court's ruling in this Opinion and Order, to the extent

Edmondson's affidavit relies on testing that was conducted after his expert report

was disclosed, that testimony is not admissible and the Court does not consider it.

The Court further finds that the remainder of Edmondson's affidavit essentially

reiterates the opinions set forth in his December 4, 2008 report and does not

remedy the <u>Daubert</u> deficiencies in Edmondson's opinions.

Plaintiffs next submitted affidavits from David M. Brani, Ph.D., P.E. and Michael B. Doyle in support of Edmondson's expert testimony. Plaintiffs offer Brani as a "validating" expert. Defendant claims that Brani's affidavit should be excluded because he was not identified as an expert witness by the December 5, 2008 deadline and he has not been qualified as an expert witness. Plaintiffs argue that they were not required to disclose Brani under Rule 26, because he is not an expert witness who may be used "at trial," but rather is only being offered for the Daubert determination. As an initial matter, Brani states that his "affidavit addresses the defendant's assertions with regard to the physical testing conducted by Mr. Edmondson . . . ." Affidavit of David Brani, ¶ 2. Brani's opinions regarding Edmondson's testing are irrelevant and thus disregarded because Edmondson's testing has been excluded for the reasons stated in this Opinion and Order. Even if the Court were to consider Brani's affidavit, it does not change the Court's Daubert analysis. Brani does not provide adequate justification for Edmondson's failure to use precise values in his calculations.

Defendant next argues that Doyle's affidavit should be excluded because he was not disclosed as an expert witness until eight months after the December 5, 2008 deadline. Plaintiff argues that Doyle was identified in Plaintiffs' Third Supplemental Initial Disclosures, filed on January 16, 2009. While Doyle was

identified in Plaintiffs' January Supplemental Initial Disclosures, he was not identified as an expert witness by the Court's deadline and Plaintiffs failed during the numerous discovery extensions they requested even to forecast they intended to offer additional expert opinion or testimony different than that disclosed in Edmondson's or Laughery's reports. Regardless, Doyle's testimony is simply that he designed and marketed a turkey fryer in order to avoid the alleged safety concerns demonstrated in the testing performed by Edmondson on January 29, 2009. Because the Court has excluded evidence of this untimely testing, Doyle's testimony in his affidavit is irrelevant and required to be excluded. Based on this evaluation, the Court considers that the untimely and inadmissible testimony in the Edmondson, Brani, and Doyle affidavits is required to be excluded.

Plaintiffs also submitted an affidavit from Laughery in which he responds to Defendant's criticisms of his opinions. Defendant contends that Laughery's affidavit should not be considered because it is untimely under Rule 26 of the Federal Rules of Civil Procedure. The Court agrees. The affidavit and any opinions in it were filed after the December 5, 2008 deadline for filing of expert reports. However, even if the Court considered the affidavit, it does not cure Laughery's plain testimony that (1) he is not qualified to render an expert opinion regarding the turkey fryer's design or design alternatives, and (2) his opinion

regarding the fryer's "tipover hazard" is an "assumption." The remainder of the affidavit supports Laughery's opinion that the fryer's warning system was inadequate, which the Court deems reliable apart from the affidavit.

Finally, Defendant moves for sanctions for having to move to strike affidavits improperly submitted to the Court. Specifically, Defendant claims the affidavits of Laughery, Brani, and Doyle were facially inadmissible and that Defendant should be compensated for the fees and expenses incurred in having to move to strike the affidavits. In light of the Court's rulings on the motions to strike, the Court will schedule a hearing on whether sanctions are appropriate on the grounds upon which this sanctions motion is based.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Strike Plaintiffs' Supplemental Report Pursuant to Rule 26(e)(2) and Exclude the Supplemental Reports and Testimony of Plaintiffs' Expert Harry Edmondson [154] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant's <u>Daubert</u> Motion to Exclude Harry N. Edmondson [166] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant's <u>Daubert</u> Motion to Exclude Dr. Kenneth Laughery [167] is **GRANTED IN PART** and **DENIED IN PART**.  As outlined above, it is **GRANTED** with respect to Laughery's opinions regarding the turkey fryer's design and design alternatives, and its "tipover hazard."  It is **DENIED** with respect to Laughery's opinion regarding the turkey fryer's warning system.

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion to Strike Plaintiffs' Expert Harry Edmondson's August 16, 2009 Affidavit [212] and Defendant's Motion to Strike Plaintiffs' Late Filed Expert Affidavits Submitted by Doyle, Brani, and Laughery, and for Sanctions Pursuant to Rule 37 [213] are **DENIED,**[10] except that the Court will defer consideration of Defendant's motion for sanctions until after it schedules and conducts a hearing on the sanctions request.

**SO ORDERED** this 9th day of December, 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[10] As outlined above, the Court considered the Motions to Strike as Defendant's objections to the admissibility of evidence contained in the affidavits.