# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JESSE COLE COCHRAN and
DANIELLE M. COCHRAN,
individually and as next friends and
natural guardians of their son
AUSTIN COCHRAN,

|                                          | Plaintiffs,          |
|:--|:--|

v.                                                      1:08-cv-1790-WSD

THE BRINKMANN
CORPORATION,

    **Defendant/Third-Party Plaintiff,**

    v.

ROY COCHRAN and RENÁ
COCHRAN,

       **Third-Party Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Brinkmann Corporation's

("Defendant") Motion for Summary Judgment [155], and Defendant's Motion for

Summary Judgment Against Roy and Rená Cochran [156].

## I.    BACKGROUND

### A.    <u>Factual Background</u>

On January 1, 2007, Austin Cochran, then seven years old, was at the home of his grandparents, Roy and Renâ Cochran, in Jackson, Georgia.  Def.'s Statement of Material Facts ("Def.'s SMF"), ¶ 1.  The plan that day was for the Cochrans to prepare a New Year's Day lunch for the family.  <u>Id.</u> at ¶ 5.  Roy Cochran was going to use the turkey fryer he had won several years earlier to fry chicken breasts for the meal.  <u>Id.</u> at ¶ 8.  The turkey fryer, when Mr. Cochran won it, was in its original packaging.  <u>Id.</u> at ¶ 9.  It came with a thirty-quart boiling pot, strainer basket, deep fryer thermometer, gas hose to connect the fryer to a propane tank, and a hanger designed to lower and remove a turkey from the pot.  Pls' Statement of Material Facts ("Pls' SMF"), ¶ 11.  The turkey fryer also included an owner's manual with instructions and warnings.  <u>Id.</u> at ¶ 19.  The warnings in the owner's manual stated:

1.    Only use the cooker on a level, noncombustible, stable surface (concrete, ground, etc.).  Do not use on wooden or other surfaces that could burn.  Do not place cooker within 10 feet of material that could burn (house, fence, tall grass, etc.).

2.    Do not use on apartment balconies, campers, or patios.

3.     Do not leave cooker unattended when hot or in use. Only adults are to operate this cooker; keep children and pets safely away. Carefully monitor all activity around cooker to avoid burns or other injuries.

4.     Hot oil and water can cause severe burns and permanent disfigurement; use caution and common sense when operating this product.

   - Do not move cooker while in use or while pan contains hot liquid.

   - Use caution when walking or standing near cooker as splattered oil may have created a slick surface.

   - Avoid bumping into cooker or pan/handle to prevent hot liquid spills or overturning cooker . . . .

5.     Do not fill cookware beyond one-half full with liquid to allow room for the addition of food and to avoid boil-over of hot liquid . . . .

6.     Do not walk between the cooker and propane tank as this creates a trip hazard. Tripping over the hose could overturn the cooker or knock the pan of hot liquid from cooker causing severe burns.

Def.'s SMF, ¶ 20. These warnings were located on the first two pages of the manual in a "WARNING" box under the heading "IMPORTANT SAFETY WARNINGS." Id. at ¶ 21. Mr. Cochran testified that it was "very doubtful" that he ever read the owner's manual. Id. at ¶ 19; Pls' Response to Def.'s SMF, ¶ 19. There were no warnings or directions affixed to the turkey fryer components. Pls' SMF, ¶ 20.

Mr. Cochran had used the turkey fryer approximately five times prior to January 1, 2007. Def.'s SMF, ¶ 14. On January 1, 2007, Mr. Cochran set up the fryer stand, propane tank, and gas hose next to a wooden picnic table on the wooden deck in the back of his house. Id. at ¶¶ 11, 12. Mr. Cochran placed the propane tank underneath the picnic table and placed the fryer stand approximately one foot from the edge of the table. Id. at ¶ 16; Pls' Response to Def.'s SMF, ¶ 16. He connected the propane tank to the fryer using the gas hose. Id. Mr. Cochran estimated that the distance between the propane tank and turkey fryer stand was about eighteen to twenty inches, and that the fryer was six to eight feet from the house. Def.'s SMF, ¶ 17; Pls' Response to Def.'s SMF, ¶ 17.

Mr. Cochran planned to use a pot manufactured by Masterbuilt Outdoor Products to cook the chicken.[1] Def.'s SMF, ¶ 22. The Masterbuilt pot was significantly smaller than the one that came with the turkey fryer. Id. at ¶ 23. The Masterbuilt pot held ten quarts while the pot that came with the fryer held thirty quarts. Pls' SMF, ¶¶ 7, 11. Mr. Cochran decided to use the smaller pot because he was only cooking chicken breasts. Def.'s SMF, ¶ 23. Attached to the pot were the following warnings:

1. Keep Children and Pets Away at All Times.

---

[1] Plaintiffs do not allege that Masterbuilt is affiliated with Defendant.

2.      Do Not Overfill Pot, Do Not Exceed Fill Line on Pot or 1/3 Full.

3.      Never Leave Pot Unattended While Cooking with Oil or Water.

Id. at ¶ 24.  Mr. Cochran filled the pot approximately three quarters full of oil.  Id.

at ¶ 25; Pls' Response to Def.'s SMF, ¶ 25.  By the time Mr. Cochran filled the

pot, Austin Cochran came out to the back deck to watch.  Def.'s SMF, ¶ 26.

Austin climbed onto the picnic table and sat down.  Id. at ¶ 28.[2]

        While Austin was sitting on the picnic table, Mr. Cochran lit the turkey

fryer's burner and began heating the oil to 350 degrees Fahrenheit.  Id. at ¶ 30; Pls'

Response to Def.'s SMF, ¶ 30.  When the oil reached the targeted temperature, Mr.

Cochran went into the house to get the chicken.  Def.'s SMF, ¶ 34; Pls' Response

to Def.'s SMF, ¶ 34.  Austin moved to follow Mr. Cochran into the house.  Def.'s

SMF, ¶ 35.  He pushed himself off the table with his hands, as he tried to jump

over the gas hose connecting the fryer to the propane tank.  Id.  While trying to get

off the table, Austin's right hand slipped and he fell onto the gas hose causing the

fryer stand, propane tank, and pot to fall over and heated oil to pour onto his back.

Id. at ¶ 36; Pls' Response to Def.'s SMF, ¶ 36.  Austin was severely burned by the

_____

        [2] Austin testified that he was sitting on the left side of the table next to the
fryer while Mr. Cochran testified that Austin was seated at the end of the table that
was further away from the fryer.  Def.'s SMF, ¶ 28; Pls' Response to Def.'s SMF,
¶ 28.  It is disputed whether Austin was sitting directly above the gas hose
connecting the propane tank to the fryer stand.  Def.'s SMF, ¶ 29, Pls' Response to
Def.'s SMF, ¶ 29.

heated peanut oil.  Pls' SMF, ¶ 4.  Mr. Cochran testified that when he turned to go into the house the fryer and pot were stable.  Def.'s SMF, ¶ 42.  He further testified that the only thing that would have caused the fryer to tip at that time was Austin. Id. at ¶ 43.

### B.    **Procedural History**

On May 16, 2008, Plaintiffs Jesse Cochran and Danielle Cochran, individually and as next friends and natural guardians of their son, Austin Cochran, ("Plaintiffs") brought this products liability action for injuries to their son allegedly caused by Defendant's turkey fryer [1].[3]  Plaintiffs allege Defendant is liable for Austin's past and future injuries related to burns he received when he fell on the gas hose that was attached to the fryer and propane tank, and the oil-filled pot tipped over and spilled hot oil on him.  Plaintiffs claim the turkey fryer was defective and unfit for use, was inherently dangerous, and did not have adequate warnings.  Plaintiffs assert strict liability and negligence claims.[4]

---

[3]  On July 8, 2008, Plaintiffs filed an amended complaint, before the Defendant filed an Answer, pursuant to Fed. R. Civ. P. 15(a)(1)(A) [9].

[4]  Plaintiffs' original complaint asserted a claim for nuisance.  The nuisance claim was not included in the Amended Complaint and thus it is deemed abandoned in this litigation.

On December 23, 2008, Defendant filed its Motion for Leave to File Third-Party Complaint [85] and, on February 11, 2009, the Court granted Defendant's Motion [116].  On February 12, 2009, Defendant filed its Third-Party Complaint against Roy and Renà Cochran, in which it alleged that the Cochrans' intervening negligence was the cause of Austin Cochran's injuries and therefore it is entitled to indemnification [126].

On July 1, 2009, Defendant filed its Motion for Summary Judgment [155] to dismiss the claims asserted by Plaintiffs and a separate Motion for Summary Judgment Against Roy and Renà Cochran [156].  On July 20, 2009, Plaintiffs filed their Response to Defendant's Motion for Summary Judgment Against Roy and Renà Cochran [181], and, on August 1, 2009, Defendant filed its Reply [186].  On August 17, 2009, Plaintiffs filed their Response to Defendant's Motion for Summary Judgment [196],[5] and, on August 28, 2009, Defendant filed its Reply [209].[6]

---

[5] On August 12, 2009, the Court ordered Plaintiffs to respond to Defendant's Motion for Summary Judgment by August 17, 2009.

[6] On July 1, 2009, Defendant filed its Daubert Motion to Exclude Expert Witness Harry Edmondson [166] and Daubert Motion to Exclude Expert Witness Kenneth Laughery [167].  On August 17, 2009, Plaintiffs filed their Responses to Defendant's Daubert Motions [194, 195], and, on August 31, 2009, Defendant filed its Replies [210, 211].

## II. DISCUSSION

### A.  Defendant's Motion for Summary Judgment

Defendant claims that it is entitled to summary judgment because Plaintiffs

failed to present any admissible evidence that the turkey fryer at issue was

defectively designed or suffered from a warning defect.  Defendant further argues

that it did not have a duty to warn of the dangers associated with the turkey fryer

and, even if it did have a duty, warnings were given and any allegedly defective

warnings did not proximately cause Austin Cochran's injuries.  Defendant finally

contends that the undisputed facts are that Austin Cochran's injuries were caused

by the intervening negligence of Roy and René Cochran and thus Defendant is not

liable for any injury he allegedly suffered.

In considering whether Defendant is entitled to summary judgment the Court

does not consider the opinions of Edmondson or Laughery on the issue of an

alleged design defect.  In its Opinion and Order on Defendant's <u>Daubert</u> Motions

to Exclude Edmondson and Laughery [219], the Court determined that

---

On August 31, 2009, Defendant filed its Motion to Strike Plaintiffs' Expert Harry Edmondson's August 16, 2009 Affidavit [212] and its Motion to Strike Plaintiffs' Late Filed Expert Affidavits Submitted by Doyle, Brani, and Laughery, and for Sanctions Pursuant to Rule 37 [213].  On September 15, 2009, Plaintiffs filed their Responses to the Motions to Strike [215, 216], and, on September 29, 2009, Defendant filed its Replies [217, 218].  The Court addresses Defendant's <u>Daubert</u> Motions and its Motions to Strike in a separate order entered on this date [219].

Edmondson's and Laughery's opinions on design issues failed, substantially, to meet the reliability and competence requirements under <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence.[7]  The Court also found that certain components of Edmondson's opinion were untimely disclosed and thus were excluded on timeliness grounds.  The Court allowed Laughery's defective warnings opinion and it is considered in this Order.

### 1.    The Standard on Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.

---

[7] In support of their opposition to Defendant's <u>Daubert</u> motions, Plaintiffs filed further testimony from Edmondson in an affidavit and offered affidavit testimony from David M. Brani and Michael B. Doyle to attempt to overcome the substantial procedural and substantive shortcomings in Edmondson's expert report and opinions.  Plaintiffs also submitted an affidavit from Laughery in which he responds to Defendant's criticisms of his expert opinions.  While targeted to bolster Edmondson's and Laughery's expert opinions, the Court has reviewed this affidavit testimony to determine if any of it presents admissible evidence which this Court is permitted to consider on summary judgment.  The Court finds the affidavits do not contain admissible expert opinions or other evidence that can be considered on the issue of design defect.  This conclusion largely is based on the Court's reasoning and findings in its Opinion and Order regarding Defendant's <u>Daubert</u> motions and motions to strike [219].  That analysis and those findings are incorporated into this Opinion and Order.

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations omitted).

### 2. Whether Defendant's Turkey Fryer was Defectively Designed

Plaintiffs allege that Defendant's turkey fryer was defectively designed. Plaintiffs rely on the testimony of expert witnesses Edmondson and Laughery to show that Defendant's turkey fryer was defectively designed.  Defendant moved to exclude Edmondson's and Laughery's testimony [166, 167] on the issue of defective design on the grounds that the opinions expressed by Edmondson and Laughery on this issue do not meet the requirements of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).  In the Court's Opinion and Order [219] entered on December 9, 2009, the Court agreed that Edmondson's and Laughery's testimony about the alleged defects in the design of the turkey fryer is not competent, does not meet the requirements of Daubert, and that certain of the opinions should be excluded because Plaintiff failed to provide them by the deadline for filing expert opinions and reports.  Having excluded Edmondson's and Laughery's opinion testimony regarding defective design, the issue is whether

there remains sufficient evidence of a design defect for Plaintiffs to survive

Defendant's Motion for Summary Judgment.  The Court finds that Plaintiffs have

failed to produce any admissible evidence that a design defect exists in the turkey

fryer at issue in this case.

      In determining if a product is defectively designed, a balancing test is used

in which "the risks inherent in a product design are weighed against the utility or

benefit derived from the product." Banks v. ICI Americas, Inc., 264 Ga. 732, 734

(1994).  "This risk-utility analysis incorporates the concept of 'reasonableness,'

i.e., whether the manufacturer acted reasonably in choosing a particular product

design, given the probability and seriousness of the risk posed by the design, the

usefulness of the product in that condition, and the burden on the manufacturer to

take the necessary steps to eliminate the risk." Id.  "Relevant factors in the risk-

utility analysis include (1) the availability of an alternative safer design, (2) cost

trade-offs, (3) tactical market decisions, (4) product development, (5)

research/testing demands (technological feasibility), (6) varying corporate

management styles, and (7) regulatory restrictions." Reynolds v. GMC, No. 2:04-

cv-0106, 2007 U.S. Dist. LEXIS 73101, at * 25-6 (N.D. Ga. Sept. 28, 2007) (citing

Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1361-62 (N.D. Ga. 1999)).

Plaintiffs do not present any evidence on any of the above factors to support

their claim that Defendant's design of the turkey fryer was defective.  Regarding

the availability of an alternative safer design, which is the "heart" of a design

defect case, Plaintiffs comment that Defendant and other turkey fryer

manufacturers have manufactured different turkey fryer designs.  <u>See</u> Pls'

Response, 12-3.  Commentary and observation are not evidence that the fryer at

issue in this case was defectively designed or that the designs of other fryers are

designs that could or should have been adapted to the fryer at issue.  There simply

is no admissible evidence of alternative safer designs for the fryer in this litigation.

<u>See</u> <u>Banks</u>, 264 Ga. at 736 ("[I]n determining whether a product was defectively

designed, the trier of fact may consider evidence establishing that at the time the

product was manufactured, an alternative design would have made the product

safer than the original design and was a marketable reality and technologically

feasible.").  It is axiomatic that expert testimony is generally required to

demonstrate that alternative safer designs exist.  <u>See</u> <u>Mize v. HJC Corp.</u>, No. 1:03-

cv-2397, 2006 U.S. Dist. LEXIS 65180, at *12 (N.D. Ga. Sept. 13, 2006); <u>Bishop</u>

<u>v. Bombardier, Inc.</u>, 399 F. Supp. 2d 1372, 1382-83 (M.D. Ga. 2005).  Plaintiffs

have failed to offer reliable, admissible expert testimony or other evidence of an alternative safer design.[8]

Plaintiffs next claim they have offered evidence that the turkey fryer at issue in this case did not meet the stability test established by the American National Standards Institute ("ANSI"). Pls' Response, 6-7. Even if Edmondson's testimony was admissible, which it is not, the Court notes that neither he nor any other of Plaintiffs' experts conducted any timely testing of the turkey fryer or an alternative design for it. Without any expert testimony, Plaintiffs rely on certain testimony given by Dennis Shelp, the engineer hired by Defendant in this case. Plaintiffs allege that Shelp's testing revealed that Defendant's turkey fryer did not meet the fifteen-degree stability test established by ANSI. Id. at 7. Plaintiffs appear to argue that failure to meet an ANSI standard is evidence of defective design. That argument fails here. The Court notes that the fifteen-degree stability test referenced by Plaintiffs was not instituted by ANSI until 2002, after the turkey fryer at issue in this case was designed and manufactured. See Def.'s Reply, Exhibit A; Deposition of Christine Falco, 51-2. To support their contention that

_____

[8] Where expert opinions are excluded under Daubert, there may be an absence of evidence on an element of a claim requiring the grant of summary judgment to a defendant. See, e.g., Walker v. Blitz, USA, Inc., No. 1:08-cv-121, 2009 U.S. Dist. LEXIS 94840 (N.D. Ga. Sept. 30, 2009); Lawson v. Smith & Nephew Richards, Inc., No. 4:96-cv-297, 1999 U.S. Dist. LEXIS 18922 (N.D. Ga. Sept. 30, 1999).

the fryer as configured in this case did not meet the ANSI standard that was not then in effect, Plaintiffs rely on a test that was not even addressed in Shelp's expert report. The test cited involved a cooking pot 20 quarts larger than the one used by Mr. Cochran. See Pls' Response, 7; Deposition of Dennis Shelp ("Shelp Dep."), 16-8. Importantly, during the testing, none of the comparative turkey fryers passed the fifteen-degree stability test when the larger pot was used. Shelp Dep., 18. Because the test cited by Plaintiffs involved a fryer with a pot much larger than the pot at issue in this case, the test simply is irrelevant to the circumstances of this case and not probative of any issue in this litigation. Interestingly, when Shelp tested Defendant's turkey fryer with a pot comparable to the one used by Mr. Cochran, the fryer passed the fifteen-degree stability test and was more stable than other fryers manufactured around the same time period. Def.'s Reply, Exhibit A.

Contrary to Plaintiffs' representation, Shelp's testing does not provide any evidence of the turkey fryer's defective design.[9] Indeed, the testing that is relevant to the fryer and pot at issue here refutes Plaintiffs' improper design proposition.

---

[9] Plaintiffs also reference a lawsuit from 1997, where Defendant hired an expert witness to test the stability of one of its turkey fryers. Pls' Response, 6. The tests conducted and their results are irrelevant to the instant action. Plaintiffs admit the turkey fryer at issue in this case was developed in 1998 or 1999, id. at 5, and therefore it could not have been the same turkey fryer that was tested in connection with the 1997 lawsuit. Moreover, the expert witness hired to conduct

There simply is no admissible record evidence before the Court to support that Defendant's turkey fryer was defectively designed. To the contrary, the relevant testing that was conducted showed the fryer, as used, did not have a propensity to tip. Accordingly, there are no issues of material fact regarding Plaintiffs' design defect allegations and Defendant is entitled to summary judgment on these claims.

> **3. Whether Defendant Had a Duty to Warn and Whether the Allegedly Defective Warnings Were the Proximate Cause of Austin Cochran's Injuries[10]**

Plaintiffs also allege failure to warn claims. Plaintiffs' defective design and failure to warn claims "are separate and distinct claims arising from different duties owed by [a] manufacturer to consumers." <u>Battersby v. Boyer</u>, 241 Ga. App. 115, 117 (1999). Even when a product is not defectively designed, a manufacturer that "has reason to anticipate that danger may result from a particular use" of the

---

those tests was not identified as an expert witness in this case and therefore his opinions are excluded.

[10] Defendant first argues that Plaintiffs' expert witness Kenneth Laughery's opinion that the turkey fryer's warnings were inadequate is unreliable and should be excluded, which it also argued in its Motion to Exclude Kenneth Laughery [167]. In its December 9, 2009 Opinion and Order [219], the Court found that Laughery's opinion regarding the inadequacy of the turkey fryer's warning system met the reliability criteria of an expert witness. The Court therefore addresses Defendant's next argument that it did not have a duty to warn.

product "may be required to give adequate warning of the danger." Id. Thus, "a duty to warn can arise even if a product is not defective." Id.

To establish that the warnings were defective, Plaintiffs must show that Defendant had a duty to warn,[11] that it breached that duty, and that the breach was the proximate cause of the injury. Wheat, 46 F. Supp. 2d at 1363. "Whether a duty to warn exists . . . depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger." Hunter v. Werner Co., 258 Ga. App. 379, 384 (2002).

"Georgia law imposes no duty on a manufacturer to warn of danger associated with the use of its product if that danger is open or obvious." Pillsbury Co., Inc. v. West Carrollton Parchment Co., Inc., 210 Fed. Appx. 915, 920 (11th Cir. 2006) (quoting Sheckells v. AGV-USA Corp., 987 F.2d 1532, 1534 (11th Cir. 1993)). "[T]here is no duty to warn 'where it appears that the person using the product should know of the danger, or should in using the product discover the danger.'" Id. (quoting Sheckells, 987 F.2d at 1534). Whether a danger is open and obvious is determined from an objective, not subjective, point of view. Ream Tool

---

[11] Plaintiffs do not contend that Defendant had a duty to warn Austin Cochran of the dangers associated with the turkey fryer, but rather Mr. Cochran, who was the user of the turkey fryer and the adult supervising Austin. See Pls' Response, 23; see also Rhodes v. Interstate Battery Sys. of Am., 722 F.2d 1517, 1519 (11th Cir. 1984) (a manufacturer is under a duty to inform potential, ultimate users of a product of any facts making it dangerous).

Co. v. Newton, 209 Ga. App. 226, 229 (1993).  The plaintiff asserting a failure to warn claim bears the burden of demonstrating that the danger causing injury was latent, not patent.  Weatherby v. Honda Motor Co., 195 Ga. App. 169, 171 (1990), overruled on other grounds. "While in many cases, the obvious and common nature of a peril will be a question for the jury, it may be determined as a matter of law in plain and palpable cases."  Lamb v. Sears, Roebuck & Co., 1 F.3d 1184, 1190 (11th Cir. 1993).

Defendant contends that the dangers posed by the turkey fryer were open and obvious and therefore it did not have a duty to warn of the dangers.  Indeed, Plaintiffs do not argue that the turkey fryer's dangers were latent.  Plaintiffs simply state that the turkey fryer was unstable and could tip over if the gas hose was impacted.  See Pls' Response, 23.  These dangers, and others, were patent.

When in use, a turkey fryer consists of a stand connected to a propane gas tank by a hose, which is connected to an open flame burner that heats oil or water in an open pot.  The oil or water is heated to very high temperatures to cook food, including the raw poultry intended to be cooked in this case.  The dangers associated with the turkey fryer here are inherent, objectively open and obvious, and no reasonable jury could conclude otherwise, nor would they require a warning for the obvious danger at issue in this case.  See, e.g., Biles v. Tyson Foods, Inc.,

No. 1:95-cv-777, 1996 U.S. Dist. LEXIS 22070, at *9 (N.D. Ga. Aug. 20, 2006) (danger of cooking food in hot oil over an open flame is plainly open and obvious); see also Lamb, 1 F.3d 1184, 1190 (11th Cir. 1993) (danger of small child drowning in a swimming pool is open and obvious); Moore v. ECI Mgmt., 246 Ga. App. 601, 607 (2000) (danger of miswiring an electrical appliance is open and obvious to an installer); Weatherby, 195 Ga. App. at 172 (danger of riding a motorcycle without a cap on the gas tank is open and obvious).

Assuming Defendant had a duty to warn, which the Court concludes it did not, Plaintiffs must then show that Defendant breached that duty and the breach was the proximate cause of Austin Cochran's injuries. Where a duty to warn exists, it may be breached by: (1) failing to adequately communicate the warning to the ultimate user, or (2) failing to provide an adequate warning of the product's potential risks. Wilson Food Corps. v. Turner, 218 Ga. App. 74, 75 (1995); Thornton v. E.I. DuPont De Nemours & Co., Inc., 22 F.3d 284, 289 (11th Cir. 1994). Plaintiffs contend that Defendant did not adequately communicate the dangers associated with the turkey fryer because there were not any warnings included on the fryer itself. Specifically, Plaintiffs' expert witness on warning standards, Kenneth Laughery, opined that "there needs to be a warning system and the warning system needs to include an on-product warning" which "gives enough

information to either provide the adequate warning information or to cue the person that there's a need for that kind of information and motivate them and direct them to a secondary source like an owner's manual." Deposition of Kenneth Laughery ("Laughery Dep."), 71, 72.

This opinion ignores important facts that are present here – specifically that there was a warning on the device as configured when the accident at issue in this case occurred. The purpose of a warning is to provide information to allow the user of a product to avoid harm or injury. An "on-product" warning to avoid the injury claimed here was present. It is undisputed that the pot used by Mr. Cochran had two clear warnings, which if heeded, would have prevented the injury alleged. The warnings were:

1.     Keep Children and Pets Away at All Times.

2.     Never Leave Pot Unattended While Cooking with Oil or Water.

Both warnings were ignored. Not only was Austin Cochran – a young child – present, but he was allowed to sit on the picnic table above the pot of oil Mr. Cochran had heated to a high temperature. It is undisputed the oil temperature was 350 degrees when Mr. Cochran left Austin sitting alone above the fryer. It is also undisputed that Mr. Cochran failed to heed the warning to fill the pot only to the fill line. He exceeded by 100% the amount of oil to be placed in the pot. That the

above warnings were not on the turkey fryer stand manufactured by Defendant, but on the pot placed atop the fryer stand, is irrelevant.  The facts are that there was an "on-product" warning.  Plaintiffs cannot show that Defendant's failure to provide warnings on the fryer stand, as opposed to the pot used, was the proximate cause of Austin's injuries.  "On-product" warnings were present, but ignored.[12]

Plaintiffs' failure to warn argument is unsupported and discredited by the facts of this case.  Here, the danger that existed was open and obvious to any person who knew the purpose and use of the turkey fryer.  Moreover, Mr. Cochran ignored the "on-product" warnings, which if heeded, would have prevented Austin's injuries.  The undisputed facts here are that had Mr. Cochran not left the fryer unattended by going into his home, Austin Cochran would not have jumped off the picnic table to follow him and this accident would not have occurred.  The Court, having viewed the undisputed facts in the light most favorable to Plaintiffs and taking the record as a whole, concludes the evidence could not lead a rational

---

[12] The Court also notes that there is a fundamental causation issue in this case.  While the parties have agreed for the purposes of summary judgment that Austin Cochran's falling on the gas hose resulted in the turkey fryer tipping over, it is unclear exactly what caused the pot of hot oil to tip over.  There are a variety of impact, force, and causation possibilities here that simply are unknown.

trier of fact to find for Plaintiffs.  There being no genuine issue for trial,

Defendants are entitled to summary judgment.  <u>Scott</u>, 550 U.S. at 380.[13]

    **B.**    <u>**Defendant's Motion for Summary Judgment Against Roy and René Cochran**</u>

Defendant also filed a Motion for Summary Judgment against Roy and René

Cochran in its capacity as a third-party plaintiff.  Defendant claims that the

Cochrans' intervening negligence was the cause of Austin Cochran's injuries and

therefore it is entitled to indemnification.  Because the Court grants summary

judgment in favor of Defendant on Plaintiffs' claims, it is unnecessary to address

the substantive arguments in Defendant's Motion.  Defendant's Motion for

Summary Judgment Against Roy and René Cochran is denied as moot.

**III.**    **CONCLUSION**

For the foregoing reasons,

    **IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment [155] is **GRANTED**.

---

[13] Defendant also contends that it cannot be held liable for its alleged failure to warn because Roy and René Cochran's intervening negligence was the proximate cause of Austin Cochran's injuries.  Finding no warning defect, the Court does not address this issue.

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion for Summary Judgment Against Roy and Rená Cochran [156] is **DENIED AS MOOT**.

**SO ORDERED** this 9th day of December, 2009.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE